IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SUNFLOWER BANK, N.A,

                Plaintiff,

vs.                                                     Case No. 09-4006-SAC

FEDERAL DEPOSIT INSURANCE
CORPORATION, as RECEIVER FOR
THE COLUMBIAN BANK & TRUST CO.,

                Defendant.

MEMORANDUM AND ORDER

This case comes before the court on cross motions for summary judgment. The FDIC and Sunflower Bank, N.A. (Sunflower) seek judgment as a matter of law on Sunflower's claims for declaratory judgment, breach of contract, and unjust enrichment. The parties were permitted to file supplemental briefs addressing the possible impact of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203. The court finds that oral argument would not substantially assist in its determination of the matters, so denies the request for oral argument.

**Summary Judgment Standard**

On summary judgment, the initial burden is with the movant to point out the portions of the record which show that the movant is entitled to judgment as a matter of law. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.1992), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992); Fed.R.Civ.P. 56(c)(2). In applying this standard, the court views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party.

*Adler v. WalMart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998). This legal standard remains the same here, where the court is ruling on cross-motions for summary judgment, since each party still has the burden to establish the lack of a genuine issue of material fact and its entitlement to judgment as a matter of law. *See City of Shawnee, Kan. v. Argonaut Ins. Co.*, 546 F.Supp.2d 1163, 1172 (D.Kan. 2008). "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir.1979). To the extent the cross-motions overlap, however, the court addresses the legal arguments together.

**Uncontested facts**

The following facts, based largely on the parties' stipulations, are uncontested.

On July 28, 2008, M.J. Property & Company, Inc. ("MJP") entered into a loan agreement with Columbian Bank & Trust Company ("Columbian") wherein MJP borrowed $2,369,612.00 from Columbian ("MJP Loan") as evidenced by a Promissory Note dated July 28, 2008, executed by MJP in favor of Columbian ("MJP Note"). Columbian was the lender and payee under the terms of the MJP Note. The MJP Note was secured by a deed of trust which named Columbian as its sole beneficiary. This deed of trust, pledged by MJP as collateral for the MJP Loan, was to approximately seven acres of real estate with a 167-room hotel on it in Kansas City, Missouri.

On the same date that the MJP Loan was executed, MJP also took out a line of credit loan with Columbian. This loan was secured by a certificate of deposit in the amount of $600,000.00 held by Columbian.

MJP also had a separate general deposit account with Columbian, which did not

serve as collateral for either the MJP loan or its line of credit loan.

On the same date that the MJP Loan and the line of credit loan were executed, Columbian and Sunflower (a national bank with its principal office in Salina, Kansas) entered into a Loan Participation Agreement Without Recourse (Participation Agreement).[1] In this agreement, Columbian "sold and transferred" to Sunflower an 84.4% participation in MJP Note, together with an undivided interest in the right to receive its share of all collections with respect to the Note.[2] Columbian retained a 15.6% participation interest in the MJP Loan. Columbian also retained possession of and was the holder of the MJP Note and the deed of trust and other collateral securing the MJP Note. MJP was not a party to the Participation Agreement, and did not have any deposit accounts with Sunflower. At no time did Sunflower have any contractual obligation to MJP.

Columbian and Sunflower supplemented the Participation Agreement three days later by an agreement ("Clarification"), which specified that upon the liquidation, sale or disposition of the collateral, the proceeds of the collateral would first be applied to pay off the MJP Loan before any proceeds from the collateral would be paid on the line of credit loan. At all relevant times, Columbian was the administrator of the MJP Note and

---

[1] "By engaging in a loan participation, a "lead bank" can lend an amount to a customer in excess of the bank's lending limit, divide the loan into shares, and then contract to sell the shares to "participating banks." The result of the agreement is that the banks share in sponsoring the customer's loan and thereby do not exceed their lending limits." *Matter of Receivership of Mt. Pleasant Bank and Trust Co.,* 526 N.W.2d 549, 556 (1995).

[2] FDIC-insured financial institutions are required to account for loan participations as "sales" under applicable federal Financial Account Standards.

the Participation Agreement, and MJP remitted its payments on the MJP Note to Columbian, and subsequently to the FDIC.

On August 22, 2008, the Kansas Office of the State Banking Commissioner of the Currency closed Columbian and the FDIC was appointed as its Receiver.[3] As Receiver, the FDIC succeeded to all of the rights, titles, power and privileges of Columbian pursuant to 12 U.S.C. §1821(d)(2)(A)(I). The MJP loan was not in default on the date the FDIC was appointed Receiver, or thereafter.

At the time of Columbian's closing, the uninsured portion of MJP's deposit account held by Columbian was $364,087.56.[4] On or about November 14, 2008, the FDIC, as Receiver, applied the uninsured portion of MJP's deposit account as a set-off to the outstanding balance on the MJP Loan, allocating 84.4% of MJP's deposit account to Sunflower's interest in the MJP Note and 15.6% of it to FDIC's interest in that note. A few days later, the FDIC issued to Sunflower a general creditor class priority receiver's certificate in the amount of $307,297.18, representing its 84.4% of the offset. (Receiver's Certificate). Pursuant to the terms of the Receiver's Certificate, Sunflower is now being treated as a creditor, and will receive payments of dividends during and after the Receivership assets have been converted to cash, but there is no guarantee that

---

[3]At all times relevant, Sunflower's and Columbian's primary banking regulators were the Office of the Comptroller of the Currency and the Federal Deposit Insurance Corporation respectively.

[4]After the parties stipulated to this uninsured deposit amount, the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, was passed. Section 335 of the Act retroactively increases the standard maximum deposit insurance amount from $100,000 to $250,000 for depositors in any institution for which, as here, the FDIC was appointed as receiver between January 1, 2008, and October 3, 2008.

Sunflower will receive any payment towards the balance owed on the Receiver's Certificate.

In January of 2009, MJP paid off the MJP Loan through third-party lender refinancing. FDIC remitted $1,652,907.48 to Sunflower and retained $305,567.22 of the proceeds collected from MJP for the purposes of paying off the MJP Loan. Sunflower received and accepted the Remittance, but asserted its right to demand the amount retained by the FDIC, including the cash equivalent of the amount reflected in the Receiver's Certificate.

**Breach of contract**

Sunflower's claim for breach of contract is stated various ways. The pretrial order alleges that the FDIC "breached the parties' agreement when it failed to pay to [Sunflower] the prorated portion of funds collected against the outstanding balance of the [MJP] Loan." Dk. 26, p. 9. Sunflower's brief contends that the FDIC breached the terms of the Participation Agreement by effectively substituting MJP's deposit account for the real estate that was pledged as collateral for the MJP Loan. The FDIC denies that it breached the Participation Agreement by applying the set-off on a pro rata basis between the participants of the MJP Note, contending that the Participation Agreement specifically provides for the pro rata application of such set-offs among the participants of the MJP Note. Dk. 26, p. 11. The court understands Sunflower's argument to be that the FDIC should have retained all of the set-off proceeds for itself, should not have issued Sunflower a Receiver's Certificate for 84.4% or any amount of those proceeds, but instead should have paid Sunflower all the cash which paid off the MJP Loan in 2009, including the $305,567 which the FDIC retained as its 15.6% share of that payoff.

Both summary judgment motions rest on the interpretation and legal effect of the Participation Agreement and its Clarification, which are matters of law. This court presumptively applies state law when interpreting contracts. *United States v. Dunn*, 557 F.3d 1165, 1172 n. 5 (10th Cir. 2009). Under Kansas law, the intent and purpose of the parties is determined from an examination of the entire instrument or from its four corners.

> "The fundamental rule in construing the effect of written instruments is that the intent and purpose of the parties be determined from an examination of the entire instrument or from its four corners. Thus, the language used anywhere in the instrument should be taken into consideration and construed in harmony with other provisions." *Heyen v. Hartnett*, 235 Kan. 117, 679 P.2d 1152, 1156 (1984)...."The interpretation of a written contract which is free from ambiguity is a judicial function." *Hall v. Mullen*, 234 Kan. 1031, 678 P.2d 169, 174 (1984).
> .... An unambiguous contract must be enforced according to its plain, general, and common meaning in order to ensure that the parties' intentions are enforced. (Citations omitted.)

*Kansas Penn Gaming, LLC v. HV Properties of Kan., LLC*, __ F.Supp.2d __, 2010 WL 2976768 (D.Kan. 2010). *See Payless Shoesource, Inc. v. Travelers Companies, Inc.*, 585 F.3d 1366, 1374 (10th Cir. 2009).

### Participation Agreement language

The parties agree that the Participation Agreement controls this case. The FDIC relies upon language in the agreement which states that collections, including certain set-off proceeds, shall be applied ratably between the parties. Sunflower contends that set-off proceeds are not included in the definition of "collections," so should not be distributed ratably. The parties point to the following provisions of the Participation Agreement between Columbian and Sunflower:

> 1. Participation. Subject to the terms hereof, the undersigned Seller [Columbian] sells and transfers to the Participant [Sunflower], as of the date of this

> Participation, a Participation in the Note described above together with an undivided interest in all rights and remedies relating thereto, including without limitation the right to receive its share as hereinafter set forth of all collections with respect to the Note.
> 2. Definitions. As used herein the following terms will have the meaning indicated below: ...
> b. Collections. Any and all payments of principal and interest, the proceeds of any set-off of deposit balances of Debtor(s) [MJP] or other payments of any kind or character in any way relating to the Note, including collections received from or in respect to the Collateral and the proceeds there from.
> c. Participation Percentage. The Participant's percentage of ownership, as set forth above, in the Note, Collateral, and loan instruments, as of the Date of the Participation.
> 3. Administration of Note. The Seller shall administer the Note and this Participation . . . .
> 4. Distribution of collections. . . . If the Participation is 'pro rata', all Collections shall be applied ratably between the parties hereto in accordance with the amount of their respective interests which amount shall be determined on a basis of percentage of each party in the unpaid amount of the Note, as of the close of business on the date of such Collections.

Dk. 25, Exh. A.

Sunflower agrees that the Participation Agreement called for a pro-rata distribution of collections, Dk. 30, p.10, and the Participation Agreement itself supports that conclusion. Accordingly, paragraph four, above, dictates that "all Collections shall be applied ratably between the parties hereto in accordance with the amount of their respective interests ..." Sunflower contends that the definition of a "collection" includes only set-off proceeds which are "in any way relating to the Note." FDIC counters that any set-off of MJP's deposit balances, whether relating to the Note or not, is included in that definition, but adds that the relevant set-off did relate to the Note. The Participation Agreement defines "Collections" as follows:

> Any and all payments of principal and interest, the proceeds of any set-off of deposit balances of Debtor(s) or other payments of any kind or character *in any way relating to the Note*, including collections received from or in respect to the Collateral and the proceeds there from.

7

Dk. 25, Ex. A, p. 2 (emphasis added). The parties thus dispute whether the italicized clause modifies only the "other payments" phrase immediately preceding it, or whether it also modifies the more distant phrase regarding "set-off of deposit balances."[5]

Sunflower, reading the definition of collections to include "the proceeds of any set-off of deposit balances of MJP in any way relating to the Note," contends that MJP's general deposit account which the FDIC set off was not related in any way to the Note, since MJP's general deposit account did not secure the MJP Note. Even assuming, *arguendo*, the correctness of Sunflower's interpretation of the modifying clause, its conclusion is unsupported by the facts. Set-off of the debtor's deposit accounts was specifically "related to" the MJP Note by the express terms of the MJP Note itself, which state:

> RIGHT TO Set-off. To the extent permitted by applicable law, Lender reserves a right of set-off in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which set-off would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or set-off all sums owing on the indebtedness against any and all such accounts.

Dk. 34, Exh. A, p. 2. Given this express link between the set-off of the debtor's deposit accounts and the MJP Note, no reasonable juror could find that proceeds[6] of the set-off of MJP's deposit balances were unrelated to that Note. The FDIC was contractually bound by specific language in the Participation Agreement to allocate 84.4% of the set-

---

[5]Neither party alleges that the definition of "Collections" or any other language in the Participation Agreement is ambiguous.

[6]Black's Law Dictionary (8th ed. 2004) defines "proceeds" as:1. "The value of land, goods, or investments when converted into money."

off amount to Sunflower in November of 2008, as it did.

Sunflower additionally contends that it contracted for the right to control disposition of the collateral and that the FDIC breached the Participation Agreement by effectively substituting the MJP deposit account for the real estate that was pledged as collateral. Sunflower agrees that participating lenders seeking "control over decisions affecting modification or collection of loans…must explicitly provide for that control in the participation agreement." *First Bank of Wakeeney v. Peoples State Bank*, 12 Kan.App.2d 788, 790, 758 P.2d 236, 238 (1988). Dk. 31, p. 2. Sunflower relies upon the Participation Agreement's provision that Columbian cannot "amend, modify, or terminate any agreement or guaranty with respect to the Note, Collateral, or any documents or instruments related thereto" without Sunflower's permission. No facts tend to show that this provision was breached, however, and this restriction on the bank's right to modify agreements or documents relating to the note or collateral does not equate to a restriction on the bank's or FDIC's right to control the allocation of proceeds either from the deposit set-off in 2008 or from the MJP Loan payoff in 2009.

The parties understood the manner in which collections would be distributed and knew how to alter that distribution, as evidenced in the Clarification Agreement which specified the priority of distribution in the event of disposition of collateral. *See* Dk. 25, Exh. B (agreeing that proceeds from any liquidation, sale or disposal of the collateral securing the MJP Note would first be applied to that Note before any proceeds could be applied to MJP's line of credit loan with Columbian.) Sunflower and Columbian could have agreed that any set-off of MJP's deposit account would be applied entirely to Columbian's 15.6% retained interest in the MJP Loan, as Sunflower now desires. Not

9

surprisingly, they did not do so. Because the parties specified in the Participation Agreement the manner of disposition of collections to which they agreed (pro rata) that provision must be enforced as written, whether or not it results in perceived inequity.

Further, the FDIC had the authority to issue a Receiver's Certificate in lieu of cash. *See* 12 U.S.C. § 1822(d)(10)(A) (authorizing the FDIC, as receiver, to "pay creditor claims ... in such manner and amounts as are authorized under this chapter"); *Battista v. FDIC*, 195 F.3d 1113, 1116 (9th Cir. 1999), *cert. denied*, 531 U.S. 812 (2000).[7] Sunflower has failed to show a material question of fact that the FDIC acted contrary to the express terms of the Participation Agreement with regard to the set-off in 2008 or the payoff in 2009.

**Equitable preference**

Sunflower additionally contends that the general equities of the situation compel a finding in its favor. This court is not at liberty, however, to make for the parties a better or more equitable agreement than they themselves were satisfied to make. *See Fourth Nat. Bank & Trust Co., Wichita v. Mobil Oil Corp.*, 224 Kan. 347, 582 P.2d 236 (1978). "Where, as here, a contract is unambiguous, [the Court] will not, under the guise of contract interpretation, write a new contract for the parties to achieve some perceived equitable result for which the parties themselves did not bargain." *Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 443 F.3d 1240, 1244 (10th Cir. 2006) (citations

---

[7]Requiring the FDIC to pay certain creditors in cash would allow those creditors to "jump the line," recovering more than their pro rata share of the liquidated assets, if the financial institution's debts exceed its assets, thus subverting § 1821(i)(2)'s limitation on an unsecured general creditor's claim to only a pro rata share of the proceeds from the liquidation of the financial institution's assets. *See Battista*, 195 F.3d at 1116.

10

omitted).

## FIRREA

Significantly, the cases cited by Sunflower which discuss equitable preferences were all decided before FIRREA's enactment in 1989. (Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. 101-73, 103 Stat. 183. FIRREA contains a statutory provision that prohibits relief which would restrain or affect the exercise of powers or functions of the FDIC as a receiver. It provides:

> (j) Limitation on court action
>
> Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

12 U.S.C.A. § 1821(j) (enacted as part of § 212(a) of FIRREA). This statute generally deprives federal courts of jurisdiction to grant any form of equitable relief against the FDIC as receiver. *See Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522, 101 S.Ct. 1221, 1234, 67 L.Ed.2d 464 (1981) (when Congress enacts a statute prohibiting a federal court from granting a certain type of remedy, that limitation is jurisdictional).

> Although this limitation on courts' power to grant equitable relief may appear drastic, it fully accords with the intent of Congress at the time it enacted FIRREA in the midst of the savings and loan insolvency crisis to enable the FDIC and the Resolution Trust Corporation ("RTC") to expeditiously wind up the affairs of literally hundreds of failed financial institutions throughout the country. *See* H.R.Rep. No. 101-54(I), 101st Cong., 1st Sess. 291, 307, reprinted in 1989 U.S.C.C.A.N. 86, 87, 103.

*Freeman v. FDIC*, 56 F.3d 1394, 1398 (D.C. Cir.1995). The purpose of the statute is to permit the FDIC as receiver to "function without judicial interference that would restrain or affect the exercise of its power." *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 397

11

(3d Cir.1991) (applying § 1821(j) to the RTC). *See Volges v. Resolution Trust Corp.*, 32 F.3d 50, 52 (2d Cir.1994).

Although the Tenth Circuit has not reached the issue, other circuits have found the statute to constitute "a sweeping ouster of courts' power to grant equitable remedies." *Freeman*, 56 F.3d at 1399. *See e.g., Courtney v. Halleran*, 485 F.3d 942, 948 (7th Cir. 2007); *Hanson v. FDIC*, 113 F.3d 866, 871 (8th Cir.1997). The ban is an essential part of the FDIC's ability to function as a receiver. *Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir.1996). Although commonly called "the anti-injunction provision," Section 1821(j) prohibits a federal court from granting a party any sort of equitable relief that would "restrain or affect" the RTC in carrying out its statutory powers. *Hoxeng v. Topeka Broadcomm, Inc.*, 911 F.Supp.1323, 1334 (D.Kan.1996) (finding relief of specific performance would violate § 1821(j)), quoting *Pyramid Constr. Co. v. Wind River Petroleum, Inc.*, 866 F.Supp. 513, 517 (D.Utah 1994) (finding rescission of sale of real property by RTC would violate § 1821(j)). *See Lloyd v. FDIC,* 22 F.3d 335, 336 (1st Cir.1994) (district court lacks jurisdiction to enjoin the FDIC's foreclosure on the property of a debtor when FDIC is acting pursuant to its statutory powers as receiver); *Jones-Boyle v. Washington Mut. Bank, FA* 2010 WL 2724287, 5 (N.D.Cal. 2010) (finding any equitable remedy against the FDIC arising from a borrower's TILA claim would restrain the FDIC's statutory powers); *Kuriakose v. Federal Home Loan Mortg. Co.,* 674 F.Supp.2d 483, 493 (SDNY 2009) ("... courts generally have interpreted the anti-injunction provision broadly, holding that FIRREA bars all equitable relief relating to the statutorily provided powers of the receiver."); *Homeland Stores, Inc. v. Resolution Trust Corp.*, 1992 WL 319659 (D.Kan. Oct. 13, 1992), *aff'd,* 17

F.3d 1269 (10th Cir.), *cert. denied*, 513 U.S. 928, 115 S.Ct. 317, 130 L.Ed.2d 279 (1994) (finding that enjoining a non-RTC defendant in connection with a tortious interference with contract claim would violate section 1821(j) just as though the RTC were enjoined directly); *Glenborough New Mexico Associates v. Resolution Trust Corp.*, 802 F.Supp. 387, 393 (D.N.M.1992) (finding FIRREA's extensive regulatory provisions preclude non-monetary relief).

As receiver, the FDIC has substantial powers over Columbian's assets, which include the real property to the extent it served as collateral for the MJP Loan, MJP's CD, and MJP's general deposit accounts. Under 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC, as a receiver, succeeds to "all rights, titles, powers, and privileges of the insured depository institution ...." 12 U.S.C. § 1821(d)(2)(A)(i) (Supp II.1990). As receiver, the FDIC may "place the insured depository institution in liquidation and proceed to realize upon the assets of the institution," 12 U.S.C. § 1821(d)(2)(E) (Supp II.1990), "transfer any asset or liability of the institution," 12 U.S.C. § 1821(d)(2)(G)(i)(II) (Supp II.1990), and "exercise ... such incidental powers as shall be necessary to carry out [its stated] powers." 12 U.S.C. § 1821(d)(2)(J)(i) (Supp II.1990). When the FDIC acts as a receiver, it has broad authority to dispose of assets and to 'collect all obligations and money due the [failed] institution.' 12 U.S.C. § 1821(d)(2)(B)(ii). "The exercise of these powers may not be restrained by any court, regardless of the claimant's likelihood of success on the merits of his underlying claims." *Freeman*, 56 F.3d at 1399.

Imposition of a constructive trust as sought by Sunflower would necessarily "restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." 12 U.S.C. § 1821(j). Under Kansas law, a constructive trust arises where a

13

person holding title to property is subject to an equitable duty to convey it to another because he would be unjustly enriched if he were permitted to retain it. *Nelson*, 288 Kan. at 585-586. For this court to act as a court of equity, impose a constructive trust on the funds used to pay off the MJP Loan in 2009, and make Sunflower the beneficial owner of all of those funds would necessarily restrain the FDIC's rights to title over Columbian's assets, the FDIC's rights to realize upon Columbian's assets, and the FDIC's rights to transfer Columbian's assets. As a result, pursuant to § 1821(j), the district court is barred from hearing Sunflower's constructive trust claim, and summary judgment is proper.[8]

### Pre-FIRREA equitable principles

Even if the court had relied upon equitable principles preexisting the enactment of FIRREA, or had exercised jurisdiction pursuant to 1821(d)(6) or another provision, the result would be no different. Sunflower concedes that MJP had a right to a voluntary set-off of its uninsured deposit accounts, and that there was sufficient mutuality between the FDIC and MJP to permit the set-off. Dk. 30, p.13. Equity generally does not favor a direct recovery against the receiver in preference to the general pro rata distribution of assets once a set-off has occurred. *See FDIC v. Mademoiselle of California*, 379 F.2d 660, 664 (9th Cir.1967) (holding, based on equity, that depositor had right to exercise a set-off, even though an undivided interest in the loan had been sold to a participant).

---

[8] For the same reasons, the Court is not persuaded that the Dodd-Frank Act enables this Court to decrease the uninsured portion of MJP's deposit account held by Columbian at the time of its closing from $364,087.56 to $214,087.56 and to compel the FDIC to award Sunflower either the entire $150,000 in cash or Sunflower's pro-rated share of that $150,000 reduction, as Sunflower requests. *See* Dk. 42.

Sunflower admits that the preference it seeks is an exception to the general rule. Dk. 38, p. 4.

A participant could establish a preference only where the facts compelled the court to find in equity that the property was not that of the bank but that of the claimant. *Mademoiselle*, 379 F.2d at 664. To claim a preference over general creditors in the distribution of the assets of an insolvent national bank, a claimant had to show: 1) the existence of a trust relationship instead of a debtor-creditor relationship; and 2) the assets of the bank were augmented by the transaction, and 3) had to trace and identify the trust res to some identifiable thing of value in the receiver's hands. *See Queenan v. Mays*, 90 F.2d 525, 531 (10th Cir.), *cert. denied*, 302 U.S. 724 (1937). The same rules applied generally to participants who sought to establish a preferred claim in the amount of its participation against the assets of the lead bank, as the Tenth Circuit found in *Hibernia Nat. Bank v. Federal Deposit Ins. Corp.,* 733 F.2d 1403, 1407 (10th Cir. 1984):

> ... a party, such as [a participant], seeking to impress a trust on an insolvent bank's assets (here, by precluding offsets), must first establish a fiduciary relationship and thereafter trace the trust property in its original or converted form into identifiable property in the receiver's possession. *Kershaw v. Jenkins*, 71 F.2d 647 (10th Cir.1934).

*See Chase Manhattan Bank, N.A. v. Federal Deposit Ins. Corp.*, 554 F.Supp. 251, 254 (W.D. Okla.1983); *Mademoiselle*, 379 F.2d at 664-65.

In this circuit, it is well established that a set-off does not augment the assets in the hands of the receiver or create a specific fund to which equity will attach property rights. *Mademoiselle*, 379 F.2d 660. *See Hibernia,* 733 F.2d 1403 (10th Cir.1984) (holding it is only the balance, if any, after set-offs are deducted, which can justly be held to form part of the assets of an insolvent bank.) Under Tenth Circuit precedent,

borrowers are allowed to set-off credits with the lead bank even against debts due under the participated loan because a set-off is only a bookkeeping transaction or a shifting of credits within the lead bank which by its very nature cannot augment the receiver's estate or create a specific fund. *Hibernia*, 733 F.2d at 1408. Importantly, "the right to set-off is governed by the state of things existing at the moment of insolvency, not by conditions thereafter arising...." (Citation omitted.)" *Federal Deposit Ins. Corp. v. Liberty Nat. Bank & Trust Co.*, 806 F.2d 961, 967 (10th Cir.1986). Accordingly, Sunflower cannot show that the set-off in 2008 resulted in "funds" which augmented the insolvent estate and which constitute a traceable res upon which this court could impose a constructive trust.

Perhaps in recognition of that fact, Sunflower does not contend that it is the equitable owner of the FDIC's 2008 set-off of $307,297 for which Sunflower obtained the Receiver's Certificate. Instead, Sunflower contends that it is the equitable owner of the subsequent 2009 payment of $305,567 which the FDIC retained, because those funds were paid by MJP in consideration for the release of the collateral that served as security for the MJP Loan in which Sunflower participated.

Participation agreements are arms-length contracts between relatively sophisticated financial institutions and do not establish fiduciary relationships. *See Wakeeney*, 12 Kan.App.2d at 793.

> Ordinarily, banks involved in commercial arm's-length transactions do not stand in a fiduciary relation to each other... This general principle holds true for loan participation agreements ... The fact that the lead bank holds title while acting as an agent for the participant does not render the agent a trustee for the participant.

*Northern Trust Co. v. Federal Deposit Ins. Corp.*, 619 F.Supp. 1340, 1344 (W.D. Okla.

16

1985). "[Fiduciary] duties do not arise as a matter of course between buyer and seller...or between borrower and lender." *Sporting Club Acquisitions, Ltd. v. FDIC*, 70 F.3d 1282 (Table) (10th Cir. 1995), *cert. denied*, 519 U.S. 810 (1996).

Granted, under Kansas law, a fiduciary relationship is not necessary for a constructive trust because such a trust may arise "whenever the circumstances under which the property was acquired make it inequitable that it should be retained by the person who holds the legal title." *Clester v. Clester*, 90 Kan. 638, Syl. ¶ 2, 135 P. 996 (1913). Additionally, one need not show actual or constructive fraud. *Nelson v. Nelson,* 288 Kan. 570, 585-586, 205 P.3d 715, 727 (2009). Nonetheless, the court finds the facts insufficient as a matter of law to establish the constructive trust principles or inequities which are necessary to bring Sunflower within the exception it invokes. Sunflower was not an owner of the MJP Loan itself, and had no property rights in the participated loan or the collateral securing it. Nor can the facts be read to suggest that the deposit account which the FDIC set-off was collateral for the MJP Loan in which Sunflower participated. Sunflower had contractual rights granted by the Participation Agreement, but that agreement was unsecured, as Sunflower received no security interest in the collateral underlying the MJP Note. Columbian reserved the right to enforce the note, Columbian held the security for the note, and Columbian held the note itself. The deed was never foreclosed since the MJP Note was never in default. Nor has it been shown that the collateral securing the MJP Note was liquidated, sold or disposed of. Instead, the note was paid off in full in January of 2009. Although the January payment augmented the general assets of the insolvent bank, the facts cannot support a conclusion that Sunflower had a trust relationship, or that the funds used to pay off the

MJP Note in January of 2009 constituted trust property such that it would be equitable to deem Sunflower the owner of all of those funds. *See Chase Manhattan Bank*, 554 F.Supp. 251.

The Court is sympathetic to Sunflower's losses, but believes the balance of equities is not in its favor, agreeing with the following:

> From an equitable standpoint, enforcing an offset against a participated loan entails balancing benefits and hardships among at least three parties: the borrower, the lead bank, and the participant(s). These permutations are compounded when insolvency is an added factor and the Court readily admits to frustration, and perhaps impossibility, in striking a balance satisfactory to all parties. The Court concludes that it is sufficient to resolve the claims in favor of the borrowers and the lead bank (so long as a sufficient basis for mutuality exists), leaving participant banks to bear the market risk of their participation venture. To charge participants with responsibility for investigating the creditworthiness and solvency of both the lead banks and their borrowers is consistent with banking policies announced by the Comptroller of the Currency in its guidelines for loan participations, infra.

*Northern Trust Co.*, 619 F.Supp. at 1343. That Sunflower, with the benefit of hindsight, can envision a distribution of collections which could have avoided hardship to all parties (and the market risk of its participation venture) is no basis for the Court to rewrite the parties' contractual agreement. The purpose of the insolvency statutes is not only to preserve rights existing at the time of insolvency, but also to prevent new rights from arising thereafter. *Liberty Nat. Bank & Trust Co.*, 806 F.2d at 965.

**Unjust Enrichment**

Unjust enrichment is based on a promise implied in law that one will restore to another that which in equity and good conscience belongs to him. *Security Benefit Life Ins. Corp. v. Fleming Companies, Inc.*, 21 Kan.App.2d 833, Syl. ¶ 6, 908 P.2d 1315 (1995), *rev. denied* 259 Kan. 928 (1996). "[I]mposition of a constructive trust is a

remedial device designed to prevent unjust enrichment by one who has an equitable duty to convey property to those to whom the property justly belongs." *Nelson*, 288 Kan at 729. Sunflower's claim for unjust enrichment impinges on the exercise of the FDIC's power granted under FIRREA, for the same reasons as stated above relative to Sunflower's claim for an equitable preference or a constructive trust.

Alternatively, assuming *arguendo* that the court has jurisdiction to consider the merits of the unjust enrichment claim, Sunflower cannot prevail. Under Kansas law, the elements of unjust enrichment are: 1) a benefit must have been conferred upon the defendant; (2) the defendant must have retained the benefit; and (3) under the circumstances, the defendant's retention of the benefit must be unjust. *Estate of Draper v. Bank of America, N.A.*, 288 Kan. 510, 534 (2009). There can be no recovery for unjust enrichment, however, based on implied terms that conflict with express terms of the parties' written contract. *Shell Petroleum Corp. v. Shore*, 72 F.2d 193, 195 (10th Cir. Kan. 1934). *See Jacobs v. Dudek*, 2006 WL 213865, 126 P.3d 1132, *4 (Table) (Kan.App. 2006). "In such circumstances the existence of an implied provision is conclusively rebutted." *Shell Petroleum*, 72 F.2d at 195. This principle is an insurmountable barrier to Sunflower's claim of unjust enrichment. Reading into the Participation Agreement an implication that the FDIC was required to apply 100% of the November 2008 set-off to the FDIC's portion of the MJP Note, and to apply 100% of the January 2009 payoff to Sunflower's portion of the MJP Note, would conflict with its express provision that set-offs, as "collections," are to be distributed on a pro rata basis. No material question of fact is thus presented on Sunflower's claim of unjust enrichment. Accordingly, no declaratory judgment is warranted.

IT IS THEREFORE ORDERED that FDIC's motion for summary judgment (Dk. 24) is granted and that Sunflower's motion for summary judgment (Dk. 29) is denied.

Dated this 30th day of September, 2010 at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge